14-2400. Mr. Buchanan. May it please the Court, Counsel. Today, four years after the Faxit issue, Dr. Stern is a fully licensed psychologist working under contract with the State of Illinois. Dr. Stern had what Dr. Fusitola termed a mild cognitive impairment in word retrieval primarily. Defendant was satisfied with Dr. Stern's work performance for many years until defendant learned that Dr. Stern had this disability. Then defendant assumed the worst, suspended him and fired him without engaging in the ADA-required interactive process. I'm a little confused about what position at the hospital Dr. Stern is complaining about. Is it his position as the director or chief psychologist or a line position as a psychologist? It is his position as chief psychologist. Chief psychologist. Or director of psychology, those terms. Whatever the title. Whatever the title is. It's that position, not another position like a line or staff psychologist. That's correct. That was the position he held when he was terminated. The work that he's doing now is not as a chief psychologist. It's as a treating or clinical psychologist. That's correct. The one thing that I got pretty clearly from Dr. Fusitola's opinion was that Dr. Stern could not continue as the chief of psychology. Now, maybe restructuring demotion in essence would have been appropriate. But I thought he was pretty clear he can't do the work that he's been doing. Right. The Dr. Fusitola report says that Dr. Stern's, I'm quoting, current constellation of administrative and clinical duties as chief psychologist is believed to be excessive. So what are the accommodations that could have been provided to permit him to perform the functions of chief psychologist? Well, Dr. Stern lists a number of accommodations in the report. And Dr. Stern suggested some Dr. Fusitola. Excuse me. Dr. Fusitola identified some accommodations in the report. And Dr. Stern at his, the meeting where a defendant fired him, suggested some accommodations as well. But don't those accommodations essentially remove his duties as chief? Well, job, yeah. And shift them to other people? They do in a way. So the ADA and EEOC guidance says that job restructuring and or part-time work schedules are reasonable accommodations under the ADA. And so we can, he can keep his clinical duties and lose some of the supervisory administrative work, or he can keep the supervisory and administrative work and lose some of the clinical duties. There are a number of ways that it could have been restructured that Fusitola and Dr. Stern suggest. And the reason why the plaintiff argues that a reasonable jury could find that he could have been accommodated in that way is that today, and at the time that the case was decided, there was no more director of psychology. They didn't hire a replacement. Defendant decided, you know what, it doesn't make sense to have our chief psychologist, our best psychologist, also spend a lot of time doing administrative work and billing. So we're going to send that to someone else with more HR experience. So that's an example of where after the fact, defendant came up with a reasonable alternative, but they never offered it to the plaintiff. Maybe this is semantics, but there's a real potential for legal confusion on an issue that can be of tremendous importance here. It seems to me, I thought you were agreeing, and I think you should agree, that Dr. Stern could not continue in his position as it was structured. Well, we don't agree with that. We think he could have. You want to rely on his wife and his secretary. Well, among other evidence. Well, that's not a promising avenue. You can argue it. I don't think it's a very promising avenue. You've got Fusatola as the only really expert evidence here saying he can't do the job as presently structured. The restructuring that you're talking about and that you suggest, for example, it's in both your briefs, but certainly you've laid it out in some detail in the reply brief, is really no longer the work of chief psychologists. That doesn't mean he's not entitled to it. He's entitled, as I understand the ADA, to at least discussion about those possibilities of a demotion, restructuring, et cetera, full-time to part-time, and so on and so forth. I don't know how this winds up working out with such a responsible professional position, but that's what I'm struggling with. I'm not struggling with whether he could do the job as he had been doing it. Well, let me give you an example of the disparate treatment. We're claiming a failure to accommodate claim and a disparate treatment claim. For the disparate treatment claim, we look at Dr. Birch's statements after he got the reason. It's obvious. Yeah, of course it's disparate treatment because of his disability. There's no doubt about that. The question is whether he is a qualified individual with a disability. That depends on job restructuring here, at best for you. Right, and I'd like to talk about that, but I think to set that up, when Dr. Birch received Dr. Fusatola's report, and Dr. Birch being an internal medicine doctor and not a psychologist, having no experience with Dr. Stern, and knowing nothing else about Dr. Stern's job besides what's in the Fusatola report, he got the Fusatola report that says the current constellation of administrative and clinical duties as chief psychologist is believed to be excessive, and he said to Fisher, the decision maker, quote, I don't think this guy should practice psychology, and he said this guy shouldn't work basically. That is, in the ADA context, the smoking gun. He is assuming that he cannot do the work when Fusatola's report does not say he shouldn't practice psychology. It doesn't say he shouldn't work for you. He says it's believed to be excessive. Here's a bunch of ways to accommodate. That is ADA evidence of disparate treatment, of discriminatory animus affecting. If the accommodations, for example, the note taking, there's a problem with his note taking because his memory only lasts 30 minutes. Aren't the consultations with patients an issue? They didn't, the clinic didn't designate cases based on complex and non-complex, and so a case could come in as a non-complex case, turn into a complex case, that's a problem. Trying to pull him off of, say, suicidal type cases, you don't always know when someone comes in initially they're suicidal. It might flip to suicidal. That's right. Just to be very clear, though, about that exact point, the Fusatola report does not say that he can't see suicidal patients. It does not say that. What it says is his current duties are believed to be excessive. As one of many non-exclusive accommodations, here's something that might work. It's up to a jury to look at the Fusatola report and decide whether it could have been accommodated. And then to get to your point about the note taking, the note taking was a proposed accommodation. She didn't say he couldn't take notes. She said he should take more notes, and you can see Dr. Stern, and Dr. Stern continues in his clinical duties, so my understanding is that it's not his clinical performance that's at issue. It's more a supervisory and administrative performance, and that's where I'm starting to look like you. Counsel, obviously one of the great problems here in this case is that, and I'll ask Defense Counsel about this, is the, in essence, immediate unilateral decision to fire him without discussing with him possible accommodations, demotions, restructuring, et cetera. That puts, means the record is in something of a limited state. I guess what, I'd like you to tell me as best you can what evidence we have in the record supporting the position that restructuring of the job in a more limited way would have been sufficient and acceptable to Dr. Stern. Well, I think evidence that he was getting his supervisory duties done without accommodation is evidence he could have done them with accommodation. Carol Snook, who was Dr. Stern's secretary, who worked with him on billing and who he supervised directly, said, and she was on dependents payroll and she was employed by a dependent when she said it, that he was I know that Fusatola's report says his duties are believed to be excessive, but on Fusatola in his deposition makes very clear he doesn't think that he can do, supervise other clinicians in their ongoing work. Right. I'm talking about the part-time or the give up the supervisory and administrative responsibilities and continue as a clinician. I'm sorry, I just lost the slide. Sorry. Okay. Fusatola's pretty strong in his deposition on no supervisory duties, but seems to leave open the door. He's not certain by any means. He doesn't know whether things are progressing or not, but leaves the door open to better note taking, maybe a little less stress, but certainly continued clinical work. Right? That's right. Okay. And what's the evidence, where do we find the evidence in the record about the hospital's later restructuring of the job? We find that in Patty Fisher's deposition when she talks about the restructuring and Dr. Stern's testimony that he said at that meeting. And you know, the point of having the process, the interactive process, to figure out what the accommodations are. So plaintiff gets shortchanged when defendants refuse to have the interactive process, then it's hard for plaintiff to come up with what the accommodations would have been. The problem I have with that is the restructuring does not leave him, would not leave him as chief psychologist. The position is eliminated and the accommodations that he needs relate to his performance as a clinical psychologist, not a supervisor. But within a couple months of when they fired him, they did away with the position anyway. There's no chief psychologist now there anyway. So could he have still been a senior person in St. Anthony's psychology department doing clinical work? So now you're answering the first question I asked you quite differently. It's not the position as chief psychologist that is in dispute. It is as a clinical, treating, or line psychologist. That's what he wanted accommodations for. And that's what, yes, so I may have misunderstood your first question, but that's what he suggested at the interview. He said there's another psychologist here. Could I switch places with that psychologist? She does more children's work, which was a specialty of Dr. Stern's anyway. So that was an example of an accommodation that he proposed and that I think the ADA would authorize. I've gone way over my time. I'm sorry I didn't get very far, so I will. We'll give you some time for rebuttal. Thank you. And we'll add three minutes on opposing counsel. Ms. Jordan. Thank you. My name is Laura Jordan. I'm here for the defendant at the St. Anthony's Health Center. Your Honors, the district court has twice decided that names fail as a matter of law, and we ask that both decisions be affirmed. The essential job functions of plaintiff's position of chief psychologist are not in dispute. Thirty to fifty percent of the job was to supervise the department. Fifteen to thirty percent of the job was administrative. And fifteen to twenty-five percent of the job involved patient care. As to that final point, on a good week Dr. Stern was treating sixteen patients, most of whom were children, with complex cases. It is hard to contemplate in this case what else St. Anthony's Health Center was supposed to do in this situation. There is no evidence that this was a contrived event. For starters, you could have talked to him about it, right? I know that the failure to discuss is not an independent violation. Correct. But that process is at the core of the ADA concept of accommodation, and it was completely cut off, according to the evidence that we have to credit here, right? Judge Hamilton, respectfully, the speed in which St. Anthony's took the decision reflect the clarity of Dr. Fusitola's determination and the severe consequences. It's not at all clear. I believe that it is, as to whether accommodations might be possible? Dr. Fusitola's test, I'm sorry, Dr. Fusitola's report was striking. Dr. Stern, his immediate memory was in the lowest two percent of a population of comparable age, and even in consideration of his high intelligence. His ability to recall a story communicated verbally after thirty minutes scored in the lowest five percent among people of similar age and intelligence. So not only did Dr. Fusitola determine that Dr. Stern should not be performing up to eighty percent of the job that he had been performing, but as to the remaining component of the clinical duties, which he was already only treating approximately sixteen patients a week, he could not and should not be performing complex cases, which the St. Anthony's Health Center had no mechanism to segregate those. It is an acute care hospital, and they treat a whole variety. But there was no confidence that he could safely treat any patient without persistent and perpetual side-by-side supervision, which was a completely impossible scenario. So it wasn't just the chief psychologist's just being a psychologist, period. Correct. And as to that final point as to a psychologist, there is no evidence in the record that they ever added another psychological or psychologist to the department. I believe that the Plaintiff's Counsel has slightly misstated the record here that somebody else is now working as a chief psychologist. That is not the case. No, he said they're not. That would suggest that at least the restructuring that might have been considered might have been reasonable. Perhaps if there was some evidence that the restructuring was some pre-planned event that gave some credence to a pretext argument, which is not the case at all. No, no, no, no, no. There's no need to get into pretext or anything like that. But the ADA obviously contemplates a pretty drastic restructuring of jobs as an accommodation. Demotions, we've said, going from full-time to part-time, and you talk before you throw away a valued employee. There is a reason why Failure to Interact, the Seventh Circuit has held, does not establish any cause of action under the Americans with Disabilities Act. The plaintiff has to be a qualified individual with a disability, which means that the plaintiff has to be able to perform the essential functions of the job with or without reasonable accommodations. An elimination of essential job functions is never a reasonable accommodation. The fact that St. Anthony's later, months later, restructured the department and no longer has a chief psychologist was merely a consequence of the loss of its chief psychologist. It can't be viewed as some accommodation, particularly whereas here, there was no other clinician that somehow picked up some missing caseload. That was directly claimed in the plaintiff's reply brief, that somehow there was this vacancy and that Dr. Stern should come in and start treating patients. That is not the case. In addition, while the plaintiff claimed on the opening argument that Dr. Stern is a treating physician, he is not treating patients of the same magnitude that he had to treat and was exposed to at St. Anthony's Health Center. Your basic position is, even as a psychologist, there were no accommodations that could be made. Correct. Dr. Fusitola confirmed that. In his deposition, he claimed that while he said there was a possibility that Dr. Stern could take notes, during his deposition, he said he still had concerns, even with note-taking skills, that whether he could safely treat patients. In Timmons and Weigel, the Seventh Circuit found that where an employer is faced with equivocal suggestions, it is not unreasonable or discriminatory to decide, as a business and an operating business, that that meant that the plaintiff was not qualified because determining essential functions of the job is solely within the purview of the employer. In this case, we're not talking about someone who's selling products in a retail store. We're talking about a doctor who sits in a room directly with a patient in a sacred environment in which people are entrusting on their care and judgment, St. Anthony's decision that he could not safely treat patients, even if we set aside and suspend the fact that he wasn't qualified to perform the job of the chief psychologist, which until today was the only position that was at issue in this case, he still couldn't treat patients. And in that situation, the decision was legitimate. One more point. In Timmons, the Seventh Circuit said that it is not discrimination based on a disability to determine, particularly whereas here we had a neutral third party who concluded that he was not fit for duty. It is not discrimination, and it is not discrimination based on a disability to find that someone was no longer fit for duty to perform the functions of the job. Therefore, the plaintiff can't even make it past the first element of his prima facie case. Yeah, but the problem with that is that it completely cuts off the discussion about accommodations, right? Because deciding essential functions of the job is not left solely to the employer. The regulations make very clear that's one of seven factors, right? Ordinarily, it gets a fair amount of deference, but it's not conclusive. And particularly considering the fact that with the subsequent amendments from 2008 and the additional flexibility that employers are required to show, I'm concerned about short-circuiting the consideration, again, of what would amount to a demotion here, but would still let him continue to work. Well, it would be an inaccurate reflection of the record to say that St. Anthony's did not consider an opportunity for Dr. Stern to continue performing clinical duties. They certainly didn't interact with him about that. They relied solely on the Fusitola report. Well, they did speak with Dr. Stern. They had a conversation. But what, per se, would have been the outcome of that conversation? Already, there's no debate that he The conversation was the termination meeting, right? That's right. But I ask, what would the outcome have been? Already, they were only looking at the chief psychologist position because there were no vacancies, there were no prospective vacancies in the department of performing any clinical work. So already, they were eliminating the supervisory and administrative duties. Patty Fisher and Dr. Birch both testified that they discussed with Sister Ann Selma, the head of human resources who's a nun that works at the hospital, whether he could perform clinical duties. And the testimony was clear that Dr. Birch and Patty Fisher had grave concerns based on the findings of Dr. Fusitola about the memory failures because they had no mechanism in the department of how to monitor and supervise in a clinical setting where a memory failure commenced beginning in 30 minutes. I see that I am out of time if the panel has no further questions. I ask that the court affirm the district court's grant of summary judgment and its motion for denial of motion re-consideration. I just want to make sure that I'm clear on another statement you made. There was no mechanism in the department to determine what were complex versus non-complex. Just in terms of the normal procedures, patients were not tracked in one group or another group? Well, partly yes and partly no. Dr. Stern, for example, admitted that with great frequency, patients, especially in mental health settings, initially present as a simple case and they can transfer to a complex case. And as a result, there is a concern about that. Someone can show up complaining of anxiety and then as it unrolls, they're suicidal. Most of Dr. Stern's patients, the majority, were children and he said most of those were complex cases. And also, the testimony on the record demonstrated that there was a concern about continuity of care. Somebody comes in and presents as simple and they progress to a complex case, changing their mental health provider mid-course can in and of itself be detrimental to the patient. Thank you. Thank you. How much time? Three minutes? Thank you. I'd just like to clear up about the termination meeting. Sister Anselma testified in her deposition that the purpose of the termination meeting was to fire the plaintiff. And that's on page 9 of her deposition. And Dr. Stern testified on page 205 of his deposition that he'd never talked about accommodations with defendants. They'd never offered to do that. So the purpose of the meeting was to fire him. From the defendant's point of view, the meeting was a success if he left fired and not a success if he left not fired. So there was no discussion of accommodation. There just was none. And then to conclude, I'd just like to say, you know, defendant's counsel is saying that he can't treat patients. That is a question for a jury. There's mixed evidence on that. The Fusatola report does not say he can't treat patients. And the Fusatola report's a little bit confusing because he says, for example, as proposed accommodations, no suicidal patient, no complex cases. He doesn't say he can't do those. So it's up to a reasonable jury to look at the Fusatola report and sort of make sense of the fact that – now, if Dr. Fusatola had said he can't do it, then I'd have no case. And if Dr. Fusatola said he absolutely can keep doing this, I'd have a great case. But it's something in the middle that's for a jury to figure out. I think the fact that he got a good recent performance evaluation is probative. I think the fact that he's still practicing psychology and license and he's practicing for the state – I'm – I'm a little troubled, counsel, by the idea that it's up to a jury to decide whether Dr. Stern is qualified or was qualified to continue providing expert psychotherapy. And I've got to say, I – look, the ADA applies very broadly, but I wonder whether there isn't some way in which this case needs to take account of the role that he played. His job, in essence – defense counsel made this point in different words, but is to be the backstop, in essence, in care for very ill people. That's right. And in other contexts, you know, suppose you get Dr. Fusatola's report on somebody who's an emergency room surgeon or a federal judge, for that matter. You start to get a little nervous about some of those roles, tasks being performed, particularly if there's no backstop. That's right. And so the question really is, can he do the job? And the problem that I have with it are the things that we talked about at the end of her argument. You need someone that can take notes. The sessions last an hour. Right, well – He has terrible recall about stories that were told. I understand they're saying he has to take really good notes, but I'm worried about – well, it really isn't how I'm worried, but in terms of the decision-maker, concerns about whether he can actually sit through an hour-long interview. The issues that we raved to somebody coming in as a simple case turned suicidal. I mean, the complex cases were not something that – I mean, Fusatola said he could handle a lighter load and especially non-complex cases, and cases flip all the time. I mean, it's just – it's the nature, and he's dealing with children and people who are – I mean, that's – you know, when they make the call, so their position is, look, we didn't bring him in for an accommodation or any kind of counseling because we thought ultimately he wasn't qualified to even deal with the psychologist portion of the job. And so it would have been pointless. And we just dispute that strongly, and I do not think that the Fusatola says – report says he cannot – Oh, no, the words are not there. The words are not there. But if we went with your rationale, the words would have to be there in order to say that someone couldn't be accommodated. And I guess another problem I have with this is this evaluation you talk about is evaluating him as the chief psychologist in his supervisory duties where the clinical duties are a very small portion of it. He was not being evaluated with respect to his performance of clinical duties. And now you're arguing that what he really needed as an accommodation was a position where he could become a clinical – exclusively a clinical practitioner. To be very clear, I think the shift could have gone the other way, I think, as well. I think that if – I think he could have shifted to administrative tasks and, for example, lost some supervisory tasks but kept the – I think, you know, you've got all these duties. You can repackage them a number of different ways. Okay. Thank you. Thank you very much. Thank you both, counsel, for your vigorous argument. We'll take the case under advisement.